IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PRINCE E. FORYOH,                )
                                 )   No. 05 C 2975
         Plaintiff,              )
                                 )   Judge Mark Filip
    v.                           )
                                 )
OFFICER REGINA HANNAH-PORTER,    )
                                 )
         Defendant.              )

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff, Prince E. Foryoh (also "Mr. Foryoh" or "Plaintiff"), filed suit in this Court on May 18, 2005. (D.E. 1 ("Complaint").) The Complaint alleges violations (at least putatively and if read generously) of both federal and state law against Chicago Police Officer Regina Hannah-Porter (also "Officer Hannah-Porter" or "Defendant"). Plaintiff's Complaint suggests a federal claim or claims advanced under 42 U.S.C. § 1983. (D.E. 1.)[1] The Court has approached the Complaint with the leniency typically afforded to *pro se* litigants and has construed the following putative Section 1983 claims: false arrest, illegal search, and excessive force. (*Id.*) The Complaint also arguably outlines a state cause of action for malicious prosecution. (*Id.*) The case is before the Court on Defendant's motion to dismiss the Complaint for failure to state claims upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. 23.) For the reasons stated below, Defendant's motion is granted.

---

[1] The various docket entries in this case are designated "D.E. __."

# FACTS

The following facts are taken from Plaintiff's Complaint. For present purposes, the Court accepts the allegations as true, as precedent instructs. The Court takes no position on whether the allegations are actually well-founded.

On July 10, 2001, Plaintiff was driving his car in the vicinity of Clark Street and Catalpa Avenue in Chicago, Illinois. (D.E. 1 at 1.) Around 12:45 p.m., Plaintiff heard the siren of a Chicago Police car behind him and pulled to the side of the road to give way. (*Id.*) As the police car drove past, the driver, Defendant Officer Hannah-Porter, pointed a gun at Plaintiff. (*Id.*) Defendant drove past Plaintiff in her police car, and Plaintiff drove on. (*Id.*)

Moments later, as Plaintiff was leaving the area of Clark and Catalpa, Plaintiff again noticed Defendant's vehicle, with its "siren light[s] on," traveling closely behind his car. (*Id.*) Again, Plaintiff stopped his car and Defendant drove past. (*Id.*)

Some time later, Plaintiff began heading home on Brynmawr Avenue. (*Id.*) At this point, for a third time, Defendant drove her police car past Plaintiff's car and pulled in front of him. (*Id.*) Both cars came to a stop, at which time two plainclothes Chicago Police Officers allegedly approached Plaintiff's car with their weapons drawn. (*Id.* at 2.) Plaintiff alleges that he told the officers he had done nothing wrong. (*Id.*) The officers allegedly put down their guns, and Plaintiff was allowed to leave the scene in his car. (*Id.*) As Plaintiff left the scene, the officers followed him. (*Id.*)

Plaintiff alleges that soon thereafter several Chicago Police Officers in vehicles stopped his car. (*Id.*) Plaintiff was told to exit his vehicle, and his car was searched. (*Id.*) Plaintiff also alleges he was forced against his vehicle while Chicago Police Officers painfully bent his hands and wrists. (*Id.*) Plaintiff alleges that he again stated that he had done nothing wrong. (*Id.*)

Eventually, Defendant was arrested and put in the back of Defendant's car. (*Id.*)

Plaintiff was taken to a police station, held for several hours, and then released. (*Id.*)

Charges for assault and traffic violations were filed against Plaintiff on July 16, 2001. (*See People v. Foryoh*, No. 01125731501, Certified Statement of Disposition at 1 (Circuit Court of Cook County 2003) (hereinafter "Certified State Court Statement of Disposition").) Plaintiff's criminal case was eventually dismissed by order of *nolle prosequi* on May 20, 2003. (*Id.* at 3.)

On May 18, 2005, Plaintiff filed a complaint in the U.S. District Court for the Northern District of Illinois. (D.E. 1.) Plaintiff's narrative Complaint makes allegations that raise putative Section 1983 violations, including false arrest, illegal search, and excessive force, as well as a putative state law claim of malicious prosecution. (*Id.*)

Defendant's motion seeks dismissal of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiff's Section 1983 and malicious prosecution claims are time-barred by the applicable statutes of limitations. (D.E. 23 at 3-4.) As explained below, Defendant's motion is granted, as this is one of the relatively infrequent cases where the time-barred nature of the putative claims is clear from the face of the pleaded complaint.

## JURISDICTION

Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's federal claims arising under 42 U.S.C. § 1983. In addition, pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over any state law claims at issue because they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." *Id.*

3

## LEGAL STANDARD

In moving to dismiss claims under Rule 12(b)(6), a party "challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). A court ruling on a motion to dismiss must examine the case in the light most favorable to the plaintiff, accepting as true all facts alleged in the complaint. *See, e.g., Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004).

Defendant's motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) argues that both the federal and state law claims are barred by applicable statutes of limitations. (D.E. 23 at 3-4.) Motions to dismiss claims as time-barred under Rule 12(b)(6) are appropriate only in limited circumstances. The argument that Plaintiff's claims are time-barred is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the Seventh Circuit has established that "[c]omplaints need not anticipate or attempt to defuse potential defenses." *United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). Nevertheless, "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (collecting cases); *accord, e.g., United States Gypsum Co.*, 350 F.3d at 626. In this regard, while dismissals under Rule 12 on grounds of a time-bar are not the norm, an extensive body of appellate precedent teaches that such dismissals, in appropriate cases, are unexceptional. *See, e.g., Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670-71 & n.14 (7th Cir. 1998) (affirming dismissal of various securities fraud claims, on *de novo* review, as time-barred under Rule 12(b)(6), and collecting extensive analogous circuit court precedent); *Treganza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (stating that if a litigant "pleads facts that

4

show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court.") (collecting cases).

## DISCUSSION

I.  Section 1983 Claims

Plaintiff's federal claims arise under 42 U.S.C. § 1983. Defendant argues that these claims are time-barred. (D.E. 23 at 3.) There is no express statute of limitations contained in Section 1983; instead, the applicable statute of limitations is the forum state's statute of limitations for personal injury claims. *See, e.g., Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (per curiam) (collecting cases). Thus, as established by Illinois law, the appropriate statute of limitations for Plaintiff's federal claims is two years. *See, e.g., id.* (collecting cases); 735 ILCS § 5/13-202. Federal law determines when a claim under Section 1983 accrues, which is "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Behavioral Inst. of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005) (internal quotation marks and citation omitted).

Plaintiff's Complaint states that the events giving rise to his putative claims for false arrest, illegal search, and excessive force took place on July 10, 2001. (D.E. 1 at 1.) Plaintiff's Section 1983 claims thus accrued on July 10, 2001, because at that time, Plaintiff either knew or should have known of the Defendant's alleged wrongdoing. *See, e.g., Behavioral Inst. of Indiana*, 406 F.3d at 929. Plaintiff filed his Complaint with this Court on May 18, 2005. (D.E. 1.) Nearly four years had elapsed between the events of the Complaint and its filing; the two-year statute of limitations had long since run. *See* 735 ILCS 5/13-202.

Teaching from the Seventh Circuit, including teaching that is only a few weeks old, makes clear that *Heck v. Humphrey*, 512 U.S. 477 (1994), does not extend what would otherwise

5

be the facially applicable statute of limitations date for Plaintiff's Fourth Amendment claims for false arrest, illegal search, and excessive force under Section 1983. *Heck* provides that certain putative constitutional claims that might arise in relation to a criminal arrest and/or prosecution cannot be raised, and thus do not accrue for statute of limitations purposes, until the conviction or sentence of the criminal defendant/putative civil plaintiff has been overturned or otherwise invalidated, or the prosecution related to them concludes unsuccessfully. *Id.*, 512 U.S. at 486-87; *see, e.g., Wallace v. City of Chicago*, 440 F.3d 421, 425 (7th Cir. 2006) (discussing *Heck*). In *Wallace*, the Seventh Circuit reconfirmed that "a '§ 1983 unlawful arrest claim . . . accrue[s] on the day of arrest.'" *Id.*, 440 F.3d at 427 (quoting and reaffirming the holding in *Booker v. Ward*, 94 F.3d 1052, 1056-57 (7th Cir. 1996) (punctuation modification in *Wallace*)). *Wallace* also makes clear that the putative Fourth Amendment/unlawful search claim in this case accrued at the time of the search—or also on July 10, 2001. *Id.* at 427-28. The alleged excessive force violation also accrued under *Heck* on July 10, 2001—given that Plaintiff alleges that the Defendant and other CPD officers painfully bent his thumb, fingers, and wrists after they arrested him without probable cause (*id.*), so there is no question that he was aware of the alleged exercise of force. *See, e.g., Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 2001) (collecting cases).

Substantial authority supports the dismissal of a suit under Rule 12(b)(6) where the facts alleged in the complaint make clear that the claims are time-barred. Thus, for example, in *Kauthar*, the Seventh Circuit held that various federal securities claims were appropriately dismissed as time-barred pursuant to Rule 12(b)(6) where the facts alleged made clear that the claims arose beyond the statute of limitations period. *See id.*, 149 F.3d at 670-71 & n.14 (collecting extensive circuit court precedent from the Seventh Circuit and sister circuits); *accord,*

6

*e.g., Walker*, 288 F.3d at 1009 (dismissal under Rule 12(b)(6) on statutes of limitations grounds proper where averments establish that claims are untimely); *Moore v. State of Indiana*, 999 F.2d 1125, 1129-30 (7th Cir. 1993) (affirming denial of leave to amend complaint because such amendment would be futile, in that proposed new claims would be properly dismissed as time-barred under Rule 12(b)(6)).

Where, as in *Kauthar*, claims have been dismissed under Rule 12(b)(6) as facially untimely, courts never have required a litigant to have affirmatively averred that none of the theoretically applicable tolling doctrines could have been at play. (It is unclear whether that is the product of the fact that in most instances, as in the instant case and as discussed further below, such doctrines seem to be clearly inapposite, or whether such a requirement would make the Rule 12(b)(6) dismissal on statute of limitations grounds so crabbed as to be meaningless.) Nonetheless, in an abundance of caution, the Court will address the limited exceptions that can toll an applicable statute of limitations, and explain why those doctrines are clearly precluded by the Plaintiff's averments in this case and other public records of which judicial notice can properly be taken. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (citing *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)); *see also Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) ("[I]n resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record.") (collecting cases).

As alluded to above, in this case, as sometimes happens, the averments make clear that the putative tolling doctrines that might apply are not colorable. For example, in this Section 1983 setting, it would be possible to toll the statute of limitations if Officer Hannah-Porter could be said to have fraudulently concealed the existence of the cause of action. *See, e.g., Smith v. City of Chicago Heights*, 951 F.2d 834, 837 (7th Cir. 1992) (teaching that the Illinois fraudulent

concealment statute (735 ILCS 5/13-215) has been "unequivocally construed . . . to reach only fraudulent concealment of the cause of action—not fraudulent concealment of the tortfeasor.") (collecting cases). Here, given that the putative claims are false arrest, excessive force, and an unlawful search of Plaintiff's car, all in his presence, the fraudulent concealment doctrine is, on the facts pleaded, clearly inapplicable.

Another putative tolling doctrine is that of equitable tolling. The state, rather than the federal, doctrine of equitable tolling governs cases such as this one in which a federal court has borrowed and applies a state statute of limitations. *See, e.g., O'Sullivan v. City of Burbank*, No. 02 C 2661, 2003 WL 22287349, at *5 (N.D. Ill. Sept. 30, 2003) (Guzman, J.) (collecting cases). Under Illinois law, equitable tolling can be in play where a plaintiff "has, in some extraordinary way, been prevented from asserting her rights in a timely manner; or the plaintiff asserted her rights mistakenly in the wrong forum." *Weatherly v. Illinois Human Rights Comm'n*, 788 N.E.2d 1175, 1180 (Ill. App. Ct. 2003) (citation omitted). Illinois precedent teaches that "principles of equitable tolling must be applied with caution." *Block v. Pepper Const. Co.*, 710 N.E.2d 85, 91 (Ill. App. Ct. 1999) (collecting cases). In applying the Illinois doctrine of tolling, the Seventh Circuit has noted that "[a]n essential element [of equitable tolling] is that the plaintiff have exercised due diligence; in other words that he have acted reasonably" despite failing to sue within the limitations period. *Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001) (collecting cases).

The averments in the Complaint and other public documents in the official records of the Clerk of the District Court for the Northern District of Illinois make clear that Plaintiff was not prevented from filing a federal lawsuit, nor was he mistaken about where such a claim could be asserted. (He could have asserted a Section 1983 claim in either federal or state court, but

8

certainly could have advanced it here.) In this regard, the Court notes that in October 2002, or some seventeen months after the allegedly false arrest, unlawful search, and assertion of excessive force at issue in this case, Mr. Foryoh, while represented by counsel, filed a different Section 1983 suit against Chicago Police Officer Charles Smith in this judicial district. (*See* D.E. 1 (Complaint) in Case No. 02 C 7221 (N.D. Ill.) (Moran, J.).) In that suit, Plaintiff alleged, *inter alia*, excessive force claims concerning events that took place in June 2002, and Mr. Foryoh demanded $1.1 million in damages.[2] (*Id.* at 4-5.) In addition, in January 2003, during the pendency of the suit before Judge Moran in which he was represented by counsel, Mr. Foryoh filed a *pro se* Section 1983 suit against several Chicago police officers and sought $2 million in damages.[3] Subsequent to settling each of the prior suits for $4,500 each, plus $500 in attorney's fees, Mr. Foryoh filed another *pro se* suit in April 2005, in which he alleged that he was the victim of an open-air beating in July 2004 by the CPD while handcuffed; Mr. Foryoh requested

---

[2] In July 2003, Plaintiff through counsel filed an amended complaint against several other officers in which he alleged, *inter alia*, that "[a] female officer grabbed Plaintiff's throat, virtually closing off his windpipe, nearly choking Plaintiff and causing him to feel faint." (D.E. 5 in Case No. 02 C 7221.) Plaintiff again sought $1.1 million in damages in the amended complaint. The docket entries in the suit reflect that it was settled in December 2003 for $5,000, with $500 of that settlement earmarked for attorney's fees. (D.E. 7 (copy of release and settlement agreement) in Case No. 02 C 7221.)

[3] In the suit filed in January 2003, concerning alleged events that occurred in August 2001, Mr. Foryoh alleged that, after he and a neighbor engaged in an argument in which the neighbor threatened him, various officers responding to Mr. Foryoh's police call thereafter beat him. (*See* D.E. 1 (Complaint) in Case No. 03 C 260 (N.D. Ill.) (Gettleman, J.) ("Officer L. Boone walked up to me and grabbed my left hand and officer L. Boone twisted my left hand which force me to turned around and officer L. Boone grabbed my right hand as well and officer L. Boone hit me very hard against the wall of the next neighborhood house and the right side of my skull hit the wall. I became dizzied with a concussion to the head to the point where I almost collapsed.").) Mr. Foryoh litigated the case himself until, after a ruling in which part of the claim was dismissed and part survived, his previous counsel entered an appearance. (D.E. 13 & 15.) The public record reflects that this suit also was settled in December 2003 for $5,000, with $500 of that settlement earmarked for attorney's fees. (D.E. 22 (copy of release and settlement agreement) in Case No. 03 C 260.)

$10 million in damages.[4] These various lawsuits against CPD officers, which Mr. Foryoh initially pursued through retained counsel and has since pursued through initiating *pro se* complaints, makes clear that he was not prevented from filing a federal lawsuit or somehow mistaken about where such a suit should be initiated. As a result, the publicly available records, of which this Court takes cognizance, as well as the averments in the Complaint make clear that issues concerning equitable tolling are not colorable in the instant suit.[5]

As previously stated, precedent concerning Rule 12(b)(6) dismissals on statute of limitations grounds does not appear to consider and rule out putative tolling issues. However, in an effort to be thorough, the Court further notes that the doctrine of equitable estoppel can in rare instances operate to preclude a party from asserting the applicable statute of limitations—with the

---

[4] Mr. Foryoh is currently litigating this Section 1983 suit, which he filed *pro se* in April 2005. (*See* Case No. 05 C 2341 (N.D. Ill.) (Gettleman, J.).) In his *pro se* Complaint, Mr. Foryoh sought $10 million in damages related to an alleged incident in 2004 in which CPD officers allegedly beat him in the open street for 20 to 30 seconds. (D.E. 1 (Complaint) in Case 05 C 2341.) Mr. Foryoh's other filings in the case reflect that, although he "called and spoke to many civil rights lawyers," none apparently was interested in taking on the case. (D.E. 23 in Case No. 05 C 2341.) That suit is currently proceeding, with the City of Chicago Corporation Counsel's Office having filed a motion on behalf of the defendant officers; the motion asserts that the suit should be dismissed with prejudice as a sanction for Mr. Foryoh's alleged perjurious statements concerning his financial status as it relates to his *in forma pauperis* eligibility. (D.E. 46 in Case No. 05 C 2341.)

[5] Mr. Foryoh has also almost certainly pleaded himself out of court concerning the "due diligence" prerequisite, which would be an alternate and independent bar against invocation of equitable tolling. *See, e.g., Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001) (refusing to equitably toll statute where plaintiff "waited for more than a year to inquire whether his lawyer had filed suit and another five months after that to file suit himself.") (collecting cases). In his underlying criminal trial referenced in the Complaint in the instant case, Plaintiff had an attorney, and Plaintiff's Complaint recounts at least one conversation that he had with this attorney about the possible impropriety of Defendant's actions. (*See* D.E. 1 at 2.) Yet Plaintiff did not timely follow-up on this conversation—he filed his civil claim nearly two years after the disposition of the criminal proceedings. Plaintiff also had access to counsel in at least his first civil rights suit (Case No. 02 C 7221), which was filed after the events took place in the instant case, and yet still never timely filed this suit.

paradigm situation being where the defendant has affirmatively promised not to plead the applicable statute of limitations as a defense. *See, e.g., Smith*, 951 F.2d at 840. In this area of the law, precedent teaches that even a promise by a putative defendant not to invoke the statute of limitations will not, in itself, be enough: precedent teaches that the plaintiff also must show "actual and reasonable reliance on the defendant's conduct or representations" and also likely must show "improper purpose on the part of the defendant and the defendant's actual or constructive knowledge of the deceptive nature of its conduct." *Id.* (collecting cases; internal quotation marks and citations omitted). (To the extent a putative defendant actively attempted to mislead a plaintiff concerning the statute of limitations, that also might bring equitable tolling back into play under Illinois law. *See, e.g., Block*, 710 N.E.2d at 90.)

In the instant case, however, nothing in the pleadings or in the realm of reasonable inferences suggests that the putative Defendant, Officer Regina Hannah-Porter, ever told or suggested to Mr. Foryoh that he was free to delay filing a federal civil rights lawsuit against her and that she would not invoke the otherwise applicable statute of limitations that would provide her with a complete defense under the law. And, independently, the pleadings reflect that such a representation could not have been the basis for any reasonable reliance by Mr. Foryoh, as he avers that he spoke to the CPD Office of Professional Standards about the alleged incident, which told him to file a federal lawsuit. (*See* D.E. 1 (Complaint) at 2-3 ("I reported the case to office of professional standard and they told me to take them to The United State District Court for The Northern District of Illinois.").) Under such circumstances, it seems as clear as one could ever get in a Rule 12(b)(6) setting that the putative federal claims in this case are time-barred and that no colorable exception to that time-bar may apply. As a result, the putative

Section 1983 claims are properly subject to dismissal. *See Kauthar*, 149 F.3d at 670-71 & n.14; *accord, e.g., Walker*, 288 F.3d at 1009; *Moore*, 999 F.2d at 1129-30.

II. State Law Malicious Prosecution Claim

Plaintiff's Complaint also putatively, at least if read generously, sets forth a claim for malicious prosecution. Seventh Circuit precedent teaches that there is no *federal* cause of action for malicious prosecution—at least where, as is the case in Illinois, state law provides a cause of action to address a malicious prosecution. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003) ("We begin by noting that . . . [the plaintiff] may not maintain an action under § 1983 for malicious prosecution.") (citing *Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001)). Nonetheless, there is a cause of action in Illinois law for malicious prosecution, and such a claim in the instant case is also properly subject to dismissal as time-barred.

The Court acknowledges at the outset that it has discretion to dismiss without prejudice the putative malicious prosecution claim, given that the federal claims have dropped from the suit. *See, e.g., Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (discussing treatment of state law claims under supplemental jurisdiction when federal claims in case are dismissed). However, as explained below, the resolution of Plaintiff's state law claim is clear and, consistent with precedent, the Court finds that interests of judicial economy "provide[] a solid footing" for the Court to retain jurisdiction over Plaintiff's supplemental state law claim. *Id.*; *accord, e.g., id.* at 502 (collecting authorities showing that "federal-state comity is certainly not served by sending back to state court doomed litigation that will only be dismissed once it gets there.") (internal quotation marks and citations omitted); *accord, e.g., Korzen v. Local Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285, 289 (7th Cir. 1996) (finding that because the supplemental claim "plainly lack[ed] merit," it was "better to resolve it on the merits rather than remand for a

12

determination by the district judge whether to retain it as a matter of discretion or remand it to state court.") (citations omitted).

Under Illinois law, "[i]n order to establish a malicious prosecution action, the plaintiff must allege facts showing: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) (internal quotation marks and citations omitted). As with Plaintiff's Section 1983 claims, Defendant has moved to dismiss the malicious prosecution claim based on failure to file within the appropriate statute of limitations.

The Illinois Tort Immunity Act states that "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS § 10/8-101(a). This one-year statute of limitations concerning state law claims against a law enforcement officer applies in the instant case. *See, e.g., Williams*, 399 F.3d at 870.

In Illinois, "[a] cause of action for malicious prosecution does not accrue until the criminal proceeding on which it is based has been terminated in the plaintiff's favor." *Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004) (citation omitted). In the case *sub judice*, Plaintiff's underlying criminal case was dismissed by order of *nolle prosequi* on May 20, 2003. (Certified State Court Statement of Disposition at 3.) "A *nolle prosequi* is a formal entry of record whereby the prosecuting attorney declares that he is unwilling to prosecute a case." *Ferguson*, 820 N.E.2d at 460. The Illinois Supreme Court has held that "the bare fact that a case has been nol-prossed is not sufficient to establish that the case was terminated favorably for the

plaintiff. Rather, the plaintiff must show that the prosecutor abandoned the case for reasons indicative of the plaintiff's innocence." *Id.* (citing *Swick*, 662 N.E.2d at 1238). Therefore, the manner of disposition of Plaintiff's criminal case may mean that his claim of malicious prosecution would fail on the required element of favorable termination.

However, as was the case in *Ferguson*, that issue "is not presented by the matter under consideration today," *id.* at 460, and the Court does not find it necessary to resolve the issue of why the prosecutor abandoned the criminal charges against Plaintiff, because Plaintiff's claim is clearly time-barred in any event. Under Illinois law, it is beyond dispute that an order of *nolle prosequi* terminates a criminal proceeding. *See, e.g., id.* ("Because the charges in *Swick* were nol-prossed, there was no dispute that the criminal proceeding had been terminated."); *id.* ("[A] *nolle prosequi* order terminates the charge . . . ."). Plaintiff filed his Complaint on May 18, 2005, nearly two years after the order of *nolle prosequi* terminated his criminal case and triggered the statute of limitations (assuming in Plaintiff's favor that the termination was on grounds favorable to Plaintiff), and almost a year after the statute of limitations on state law claims against Officer Hannah-Porter had expired. *See* 745 ILCS § 10/8-101(a) (stating that claims such as malicious prosecution actions may not be commenced "in any court against a local entity or any of its employees unless it is commenced within one year from the date that the injury was received or the cause of action accrued."). Thus the putative malicious prosecution action against Defendant is facially untimely. In addition, and as discussed at length above, to the extent that in this procedural situation the Court even properly examines potentially applicable tolling doctrines, the pleadings in this case and other public records make clear that no

tolling doctrines apply. Accordingly, Plaintiff's claim of malicious prosecution is time-barred, and the Court grants Defendant's motion to dismiss Plaintiff's putative state law claim.[6]

## CONCLUSION

For the foregoing reasons, the Court respectfully grants the Defendant's motion to dismiss. (D.E. 23.)

So ordered.

_Mark Filip_
Mark Filip
United States District Judge
Northern District of Illinois

Date: April 18, 2006

---

[6] As discussed herein, the pleadings and public records appear to conclusively negate any reasonable or plausible notion that a tolling doctrine might apply. However, in an abundance of caution, the Court specifically notes that if Mr. Foryoh thinks some tolling doctrine might somehow apply (which likely would require, at a minimum, an assertion, consistent with the demands of Fed. R. Civ. P. 11, that Officer Hannah-Porter told Mr. Foryoh that he would be free to file an untimely civil rights lawsuit against her and therefore did not need to abide by the statute of limitations), Mr. Foryoh may file a motion to reconsider. In the absence of such an extraordinary contention, however (which might well still not be enough, as Mr. Foryoh likely would need to also show affirmative and reasonable reliance and an intent to mislead), this suit is time-barred. Mr. Foryoh may continue litigating his other case against the CPD, but this one is time-barred as a matter of law.